**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**MICHAEL HEATH THETFORD,
ANGEL CENTENO-MORALES,
NELSON R. ZAPATA-VICENTE,**

                        **Plaintiffs,**

**v.**                                         **Civil Action No. 1:20-CV-82
                                               (JUDGE KLEEH)**

**UNITED STATES OF AMERICA,** *et al.,*

                        **Defendants.**

**REPORT AND RECOMMENDATION RECOMMENDING THAT
DEFENDANT ROGER WARE'S MOTION TO DISMISS [ECF NO. 74] BE GRANTED**

    This matter is before the undersigned pursuant to a referral order [ECF No. 7] entered by

Honorable United States District Judge Thomas S. Kleeh on May 4, 2020.

## I. PROCEDURAL BACKGROUND

    On September 28, 2020, Defendant Roger Ware ("Ware") filed his Motion to Dismiss

[ECF No. 74] and memorandum in support, thereof. [ECF No. 74-1].

    By motion dated October 19, 2020 [ECF No. 82], Plaintiff Michael Heath Thetford

("Thetford") requested an extension of time to file a response thereto. The Court granted

Thetford's motion in part by order dated November 3, 2020 [ECF No. 88] and allowed him an

extension to December 2, 2020. Then, on December 7, 2020, Thetford filed a Second Motion for

Enlargement of Time to Respond to Dismissal Motions [ECF No. 97], requesting an enlargement

of time to January 30, 2021. By order dated December 22, 2020 [ECF No. 98], the Court granted

Thetford's motion here and established a new filing deadline of January 30, 2021 for a response.

Thereafter, on February 3, 2021, Thetford filed the Third Motion for Enlargement of Time to

Respond to Dismissal Motions [ECF No. 101], requesting an extension to March 1, 2021 to file

1

his response. By order dated February 8, 2021, the Court granted Thetford's motion for further extension as to Ware's pending motion (and denied Thetford's motion as to other pending motions), requiring that Thetford file a response by March 1, 2021. [ECF No. 104]. Thetford's deadline has passed and the Court is not in receipt of any response as to Ware's pending motion. Thus, the issue is ripe for an order on the merits.

## II. BACKGROUND

By way of background, Plaintiffs in this action are federal prisoners at FCI Hazelton. Plaintiffs' claims involve a range of purported causes of action, sounding in constitutional and tort matters. By order of May 4, 2020 [ECF No. 9], the United States of America was substituted as a defendant as to all counts pending against Ware, except for Count Six. Thus, only this one count remains pending as to Ware in his individual capacity. In Count Six, Plaintiffs allege a civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). [ECF No. 1-1 at 33].

Plaintiffs' factual allegations are not succinct. But it appears that, essentially, Plaintiffs allege that Ware exposed Thetford as a sex offender, and did so while working in concert with prison gangs. Plaintiffs claim that Thetford's Presentence Report ("PSR") shows Thetford to be a sex offender, and that Ware obtained the PSR by fraudulent means using interstate wire communications. Then, Plaintiffs claim, Ware disclosed the PSR to other inmates. As a result, the allegations go, other inmates persecuted Thetford, as well as extorted him for commissary items and beat him. In prison terminology used in the Complaint, prison gangs are "cars" and sex offenders are "chomos." Chomos face harassment by other prisoners, and are not allowed membership in cars.

Ware argues that Plaintiffs' claims fail because: (1) the alleged disclosure of the PSR happened only once, such that there is not a "pattern of activity" as required to establish liability under RICO, (2) Plaintiffs did not exhaust their administrative remedies as required, (3) Ware enjoys qualified immunity, and (4) Plaintiffs did not plead fraud with the requisite particularity.

### III. ANALYSIS AND RECOMMENDATION

Because Plaintiffs are proceeding *pro se*, the Court must liberally construe the pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro se* complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which a plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Relatedly, the governing rules for civil actions require that Plaintiffs here set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, a complaint must set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under seminal civil procedure caselaw, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reliance on Twombly, the Supreme Court has emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## A. Exhaustion of Administrative Remedies

As Ware rightly notes, the Prison Litigation Reform Act (PLRA) sets forth a process by which Plaintiffs here must exhaust certain administrative remedies before bringing this claim, and they have failed to do so here.

The policy behind the PLRA is to provide an opportunity to correctional institutions to review, and if warranted, address, prisoner complaints and concerns, perhaps eliminating the need for legal challenge. See Nickens v. D.C., 694. F. Supp. 2d 10, 13 (D.D.C. 2010). Specifically, the PLRA requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 816 (E.D. Mich. 2006). Seminal caselaw provides that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

More specifically, federal regulations provide for an administrative process for prisoners in this context. Inmates may, under an Administrative Remedy Program, "seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. If such a grievance isn't resolved, then an inmate may file a Form BP-9 directed to the warden of the facility where the inmate is incarcerated. 28 C.F.R. § 542.14(a). Such a written request must be filed within "20 calendar days following the date on which the basis for the Request occurred." Id.

If there is not a satisfactory resolution from the inmate's perspective, then the regulations provide that the inmate may, within 20 days of the warden's response, file an appeal to the pertinent Regional Director of the federal Bureau of Prisons (BOP) on a Form BP-10. 28 C.F.R. § 542.15(a).

4

And if that is unsatisfactory to the inmate, the regulations provide for even more process by which the inmate can appeal, within 30 days of the Regional Director's response, to the BOP General Counsel. Id. There is no further administrative appeal process under the regulations beyond lodging a grievance with the General Counsel.

In the PLRA context, the Supreme Court has emphasized the need for inmates to achieve "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 83 (2006). The Supreme Court explained that this means that an inmate must utilize every sequential mechanism before the administrative agency – and that an inmate must do so in such a fashion to allow the agency to address the merits of the inmate's grievance. Id. at 90.

In the instant case, nothing in the record demonstrates that any Plaintiff complied with the requirement to exhaust administrative remedies. To this end, Ware provided an affidavit with his motion to dismiss. [See ECF No. 74-2]. This affidavit, dated September 24, 2020, is a declaration by Howard Williams, who is a Legal Assistant and Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the BOP. Id. As such, Williams is able to review the agency's digital records to determine if and/or when Plaintiffs filed necessary complaints/appeals set forth in the administrative requirements as set forth above. Id.

As for two of the Plaintiffs, Centeno-Morales and Zapata, neither filed administrative complaints related to Ware's alleged misconduct. Id. at 3, ¶ 9. Thus, the inquiry as to their claims is rather straightforward. The undersigned **FINDS** that their claims in the instant action must fail because they failed to exhaust (or even avail themselves of, in the first place) administrative remedies.

Second, Thetford effectuated some filings, but they were defective. On August 9, 2019, Thetford filed an administrative remedy request; however, this request was rejected for being

untimely filed outside of the 20-day deadline for doing so. Id. at 1-2, ¶ 4. Then, on September 5, 2019, Thetford appealed to BOP's Mid-Atlantic Regional Office. Id. at 2, ¶ 5. However, the agency dismissed the appeal because it was untimely and because Thetford did not attach the appropriate documentation of his original request (Form BP-9). Id. Some months thereafter, on January 6, 2020, Thetford lodged an appeal with BOP's central office. Id. at 2, ¶ 6. The agency similarly rejected this appeal as untimely but also informed Thetford that if he was not at fault for filing late, he could obtain a memorandum from agency staff to demonstrate as much, and re-file his grievance at the original administrative level. Id. However, rather than obtain a memorandum from agency staff and re-file at the required administrative level as instructed, Thetford instead attempted to file an appeal with BOP's Mid-Atlantic Regional Office. Id. at 2, ¶ 7. This was on May 19, 2020. Id. However, because Thetford failed to file another BP-9 at the correct administrative level, the agency rejected this attempted re-filing. Thetford attempted no other administrative remedies.

Because Thetford did not perfect an administrative claim and thus did not exhaust administrative remedies as required before instituting this litigation, the undersigned **FINDS** that his claim here as to Ware must fail.

### B. Requirement to Meet Heightened Pleading Standard

Well-established in the rules governing civil litigation is the requirement to plead certain claims, such as Plaintiffs' here, with particularity. Count Six turns on an allegation of civil RICO violations. [ECF No. 1-1 at 33]. Rooted therein are allegations of wire fraud. Id. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Accordingly, RICO allegations must be pled not in conclusory fashion, but rather with particularity. See Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989).

Plaintiffs' Count Six is both verbose and vague. Plaintiffs alleged that Ware utilized interstate wire communications to obtain Thetford's PSR. Yet, the allegations do not elucidate how, when, or under what circumstances the alleged wire fraud occurred. [See ECF No. 1-1 at 31-32, ¶ 115, and at 35-36, ¶ 126]. Plaintiffs simply allege that it occurred, without specificity, and then allege certain impacts resulting therefrom. In these pertinent paragraphs of the Complaint, Plaintiffs do not, for example, allege contents of any statement made in furtherance of the alleged fraud, or allege when and where any such statement occurred. Nor do Plaintiffs plead how any such alleged statements are even fraudulent under the civil procedure rules applicable here.

Accordingly, the undersigned **FINDS** that Plaintiffs did not plead Count Six with regard to Ware with sufficient particularity, and that the claim should be dismissed.

### C. Qualified Immunity for Ware

Under the principle of qualified immunity, government officials may be protected from civil liability for alleged acts done in they course of their official duties. As the Supreme Court has held, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity may apply to defeat claims brought against a government official is sued in their personal capacity. See Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000). Moreover:

> [Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful . . . For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations and quotations omitted). More plainly stated, under a two-prong test, for a claimant to defeat qualified immunity, "a court [first] must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citation and quotation omitted).

In the instant matter, as Ware rightly points out, Plaintiffs do not allege how there was a constitutional right at issue. For the sake of argument, even if Plaintiffs are correct in their allegations about Ware's disclosure of a PSR (and Ware does not concede that they are), Plaintiffs cite no legal authority for the argument that such disclosure is contrary to a constitutional right. Nor is the undersigned aware of any. Thus, Plaintiffs have not met the first prong of the test to defeat qualified immunity, and the inquiry ends there.

However, even if Plaintiffs could meet the first prong of the test to defeat qualified immunity, they have not shown that any such right was "clearly established" per the second prong of the test. Again, for the sake of argument, if Plaintiffs are correct that Ware disclosed PSR contents (which Ware does not conceded), then Plaintiffs have made no allegation or made any argument that there was an apparent constitutional right which Ware violated. Nor is the undersigned aware of any. Thus, neither have Plaintiffs met the second prong of the test to defeat qualified immunity.

Accordingly, the undersigned **FINDS** that Plaintiffs' claim as to Ware must fail because Ware is entitled to qualified immunity.

### D. Necessary Elements to be Pled for Civil RICO Claim

In order to state a cognizable civil RICO claim, under longstanding law, a claimant must allege that there was a <u>pattern</u> of racketeering activity. <u>See, e.g.</u> <u>H.J. Inc. v. Northwestern Bell Telephone Co.</u>, 492 U.S. 229, 232 (1989). Generally speaking, the statute requires, to establish liability, that a claimant show at least two instances of racketeering activity. <u>Id.</u>

The RICO statutory scheme is incredibly detailed and complex, made only more so by the vast amount of interpretive caselaw to which it gives rise. In making their claim here, Plaintiffs do not appreciate the breadth and complexity of a well-pled civil RICO claim. Suffice it to say that Plaintiffs' bare allegations here with respect to Ware do not rise to the level necessary to survive a challenge to the insufficiency of the civil RICO claim. Plaintiffs do not show how Ware himself engaged in extortion or threats, as required to state a cognizable claim here. Nor do Plaintiffs show the requisite patten of activity giving rise to a viable claim. Rather, Plaintiffs claim only that, one time, Ware disclosed a PSR.

Accordingly, the undersigned **FINDS** that Plaintiffs' claim as to Ware must fail because they did not sufficiently plead the elements of a viable civil RICO claim.

### E. Recommendation and Conclusion

Thus, based on the foregoing, the undersigned **RECOMMENDS** that Ware's pending Motion to Dismiss [ECF No. 74] be **GRANTED**.

Any party have fourteen (14) days (filing of objections) and then three days (mailing/service) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Thomas Kleeh, United States District

Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send a copy of this Order to all *pro se* parties by certified mail, return receipt requested, to their last known addresses as shown on the docket, and to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**:  April 13, 2021.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE